[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION re: MOTIONS Nos. 192, 193, AND 196-198
Before the court are several post judgment motions of the parties. The court addresses them in the following sequence.
I. Defendant's Revised Motion to Reargue and Reopen Judgment(#193)
This was a limited contested dissolution case which went to a full trial and then judgment on December 18, 1998. The defendant filed a motion to reargue and reopen judgment(#191). The court ordered that the motion be revised. The defendant complied, and it is his revised motion (#193) which is now before the court.
The defendant's claims essentially fall into two categories: (1) the court erred in some of its findings and legal conclusions, and (2) "significant events have occurred which have altered the parties (sic) financial conditions and render the CT Page 5245 judgment erroneous as a matter of law."
The court notes the following concerning certain findings which the defendant says are not supported by the record:
(a) The defendant states that this court should not have found him in contempt (Decision, p. 8) because the original pendente lite orders, April 1, 1996 stated "approved — not to be enforced by contempt" (Harrigan, J.) However, Judge Harrigan's Memorandum of Decision modifying these orders, April 23, 1997, clearly states that" . . . the parties' stipulation was approved by the court with the caveat "not to be enforced by contempt since both parties were remaining in the marital home." (emphasis added). The defendant was dispossessed of the home in January, 1998. The stated reason for the caveat therefore ceased. The orders were enforceable by contempt.
(b) The court's recollection concerning the Soundview property, was that the plaintiff testified that at the time of the marriage the defendant owned it; the defendant testified he bought it in 1972. The fact that the defendant may have acquired Soundview 3 years prior to this 23 year marriage would be, in the court's view, an immaterial variance given all other facts and circumstances in this case.
(c) The court's finding that properties were able to be acquired primarily because of gifts and loans from plaintiff's parents and defendant's inheritance is supported by the evidence.
(d) The court's full finding concerning the defendant's financial affidavit is supported by the evidence, including tax returns. The evidence and reasonable inferences also support the finding of defendant's relative control over the parties' share of Willett Avenue monies.
(e) While the Lantern Lane mortgage had principal reduction during the dissolution action, the court's recollection was that it was not relatively as significant as the South Main and Soundview mortgage reductions.
(f) The evidence at least supported the finding that the plaintiff's parents deeded the Madison property to her and her siblings, but retained or used it as their residence. More significantly, the court found the present value of CT Page 5246 plaintiff's interest to be $40,000, exactly the amount defendant claimed.
(g) The parties' filed stipulations of June 30 and July 1, 1998, both support a finding of the value of defendant's Florida property at $5,000.
(h) The defendant's claim of liability for this $97.17 item is without merit.
More generally, the defendant asks the court to reopen the judgment for purposes of reconsidering the property division. The court declines defendant's invitation. The court carefully considered the evidence in light of the statutory criteria, including §§ 46b-81 and 82.
The defendant's second category of claims asks the court to reopen the judgment because of circumstances which occurred following trial. The court held an evidentiary hearing thereon.
The dissolution trial concluded on August 21, 1998. In early October, 1998, the defendant received papers from the mortgagee on Soundview indicating that the property was being foreclosed because the mortgage was in arrears. The defendant testified that he couldn't "hold off" the foreclosure, so he sold the South Main property. He testified he sold it without a broker about two weeks after the Soundview foreclosure started for $236,000 in an "all cash" deal. He says this sale netted him about $59,000. He used $17,000 to reinstate the Soundview mortgage. The rest went to pay "bills," including $17,000 to pay New York state capital gains tax resulting from the South Main sale. The defendant claims he has $5,000 left.
This court cannot ignore the fact that the defendant was at all times enjoined by the automatic orders, P.B. §25-5(a)(1), from selling any of his properties, including South Main. According to the foreclosure complaint, the Soundview mortgage had been delinquent since May, 1998. Yet the defendant never sought relief from the automatic orders to address the matter of the mortgage delinquency. He never advised the court of the circumstances until January 5, 1999, some 2 1/2 months after the sale and 2 1/2 weeks after this court's judgment. The defendant now asks this court for equitable relief, though he himself is guilty of unclean hands and delay. CT Page 5247
Even were this court to countenance these circumstances, this court has serious misgivings about the South Main sale itself. This sale, when viewed in the best light toward the defendant, appears imprudent; in its worst light, the sale approaches the incredulous. The court questions the purported $236,000 sales price. On his June 23, 1998 financial affidavit, the defendant himself valued South Main at $300,000.[1] The court found the value to be $300,000. The mortgage in June was approximately $170,000. Moreover, Soundview, the actual property being foreclosed, was found to be worth $235,000, and had a mortgage of only $38,000. There was significant equity. This court simply cannot understand why or believe that anyone would rush to sell South Main, especially at $236,000, under all these circumstances. This court is extremely dubious about the defendant's actions. Even if they are as he testified, the defendant brought about upon himself the changed circumstances and hardship of which he now complains.
For all the foregoing reasons, defendant's revised motion to reargue and reopen judgment is denied.
II. Plaintiff's Motion for Relief from Stay Pendente Lite (#192).
The plaintiff has filed a motion for relief from stay of certain orders of the court's judgment, pursuant to P.B. §61-11.[2]
P.B. S. § 61-11(2) provides in pertinent part that ". . . if the judge who tried the case is of the opinion . . ., that the due administration of justice so requires, the judge may at any time, upon motion and hearing, order that the stay be terminated."
This court believes that the due administration of justice requires any stay be terminated. To allow a stay to continue as to all but the defendant's obligation to pay periodic alimony, which is excepted from a stay, would frustrate the entirety of the court orders for support and maintenance of the plaintiff.
Therefore, this motion is granted, except for that order, only, compelling the actual transfer of 29 Willett Avenue, Port Chester, N.Y., to the plaintiff.[3]
III. Plaintiff's Motion for Counsel Fees (#196), Motion forContempt (#197), Motion to Compel (#198).
CT Page 5248
Plaintiff's Motion for Counsel Fees (#196) is denied, but without prejudice as to any "future post judgment litigation of the defendant."
Plaintiff's Motion for Contempt (#197) is denied, but defendant is ordered to comply with orders entered on Plaintiff's Motion to Compel (#198).
Plaintiff's Motion to Compel (#198) is granted to the following extent: the defendant is ordered to comply with the terms of the judgment; however, as to the Willett Avenue property, the plaintiff shall be entitled to all rents or income derived therefrom notwithstanding that a stay continues as to the order requiring defendant to transfer title to the plaintiff.
So Ordered.
KAVANEWSKY, J.